UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| IN RE:<br><br>BRANO ZECEVIC AND<br>PHYLLIS ZECEVIC<br>    Debtors.<br>_____<br>ATTORNEYS' TITLE INSURANCE<br>FUND, INC.<br>    Plaintiff,<br>v.<br><br>BRANO ZECEVIC<br>    Defendant. | )<br>)<br>)<br>)  Bankruptcy No. 05 B 30691<br>)<br>)<br>)<br>)<br>)<br>)  Adversary No. 05 A 02575<br>)<br>)<br>) |

## MEMORANDUM OPINION DENYING DEFAULT JUDGMENT

This Adversary relates to the bankruptcy case of Brano Zecevic ("Debtor" or "Defendant"). Attorneys' Title Insurance Fund, Inc. ("Plaintiff" or "Attorneys' Title") brought the instant Adversary proceeding objecting to dischargeability of Plaintiff's debt to it under the fraud exception 11 U.S.C. § 523(a)(2)(A). The Plaintiff stands in the shoes as assignee or subrogee of LaSalle Bank NA who, it asserts, was defrauded by Defendant.

Debtor failed to answer. Plaintiff then moved under Fed.R.Bankr.P. 7055(a) for entry of default judgment. An order of default was entered. Plaintiff sought to prove up its case by affidavit and proposes findings of fact and conclusions of law seeking a judgment by default that its debt is nondischargeable because the Debtor allegedly committed fraud by drawing $105,000 on a line of credit from his creditor, LaSalle Bank NA ("LaSalle"). The credit line was originally granted in April of 2002, then secured by real estate collateral and the original debt was paid off in January of 2004 when the collateral was sold. After the collateral was sold, LaSalle

nonetheless kept the credit line alive and Debtor drew on it. Debtor drew on the credit line to extent of the $105,000 here in issue. His Chapter 7 bankruptcy was filed in August of 2005. The insurance company Plaintiff paid LaSalle its loss after this bankruptcy was filed, and was subrogated to LaSalle's rights.

The default Complaint and the prove-up affidavit and proposed findings of fact and conclusions of law filed on this record do not demonstrate even *prima facie* a basis for relief. From this record it appears that LaSalle Bank knew that its collateral was sold but continued to honor Debtor's draw on his line of credit. No fraud was established as to Debtor's continued draws on that credit. For reasons discussed below more fully Plaintiff's motion is denied.

## JURISDICTION

This court has jurisdiction over this matter under 28 U.S.C. § 1334(a) and 28 U.S.C. § 157. This matter is referred here by District Court Internal Operating Procedure 15(a), and is a core proceeding under 28 U.S.C. § 157(b)(2)(I). Venue lies in this district pursuant to 28 U.S.C. § 1409(a).

## ALLEGATIONS OF THE COMPLAINT AND AFFIDAVIT

1.      On August 5, 2005 Debtor and his spouse, Phyllis Zecevic, jointly filed a Chapter 7 bankruptcy petition.

2.      On November 7, 2005 Plaintiff filed this Adversary proceeding against Debtor.

3.      AITF is a corporation incorporated under the laws of the State of Florida, having its principal place of business in Orlando, Florida. (Compl. ¶ 1.)

4. On or about April 9, 2002, Debtor entered into Credit Agreement and Disclosure ("Credit Agreement") with LaSalle. The Credit Agreement imposed a credit limit of $105,000. (Compl. ¶ 3.)

5. The only Borrower listed under the Credit Agreement is the Debtor. (Ex. 1 to Compl.)

6. On or about April 9, 2002, together with and as part of the execution of the Credit Agreement, Debtor executed a mortgage agreement in favor of LaSalle for real property located at 1757 East Touhy, Des Plaines, IL 60018 (the "Property"), granting to LaSalle a mortgage on the Property ("Mortgage") to secure the then-current and future amounts owed by Debtor under the Credit Agreement. (Compl. ¶ 4.)

7. On or about January 29, 2004 Debtor sold the Property without terminating the Credit Agreement. (Compl. ¶ 5.)

8. When the Property was sold, ATIF issued title insurance policies insuring that the purchasers of the Property would have good title, free and clear of all liens. In order to fulfill its obligations under those title insurance policies, ATIF was forced to pay LaSalle the $105,000 owed by the Debtor under the Credit Agreement. In consideration for that payment, on or about March 17, 2005 the Credit Agreement was assigned from LaSalle to ATIF. (Compl. ¶ 6.)

9. As a result of the sale of the Property, the Mortgage, which secured the Credit Agreement, was extinguished. (Compl. ¶ 7.)

10. After the sale of the Property, Zecevic continued to draw funds under the Credit Agreement. (Compl. ¶ 8.)

11.     Debtor proceeded to make withdrawals against the credit line until his indebtedness to LaSalle reached the principal amount of $105,000. (Compl. ¶ 9.)

On November 7, 2005 Plaintiff filed a Motion for Default, Affidavit, and Statement of Facts and Conclusions of Law in Support of Motion for Default Judgment. What the Complaint does not say but the record demonstrates clearly is that when LaSalle lost its collateral, it carelessly failed to cancel the credit line though it had a contractual right to do so. It thereby allowed Debtor to continue to draw on the credit line though it knew that credit was wholly unsecured.

## DISCUSSION

### Service of Process

Bankruptcy Rule 7004(b)(9) provides that in adversary proceedings service upon the debtor may be made within the United States by first class mail prepaid. Bankruptcy Rule 7004(b)(9) does not require proof of actual receipt; it requires only that the summons and complaint be mailed to both the debtor and debtor's attorney. In re Vincze, 230 F.3d 297, 299 (7th Cir. 2000) (finding that because creditor mailed complaint and summons to debtors' attorney and to the address listed in debtor's bankruptcy petition creditor's service of process was sufficient, even if debtors were out of the country and did not actually receive notice of the complaint and summons). Service is effective on a debtor even if mailed to the wrong address if the address to which the complaint and summons is mailed is the last listed by the debtor in a filed writing. Id. (citing In re Coggin, 30 F.3d 1443, 1450 (11th Cir. 1994)).

In this case, Plaintiff mailed the complaint and summons to the address listed on Debtor's bankruptcy schedules. Debtor moved and left no forwarding address. Under Seventh Circuit

standards, service is effective because the complaint and summons was mailed to Debtor at his last listed address. A copy of the complaint and summons was also sent to Debtor's attorney who did not appear in this Adversary proceeding. (A debtor's attorney does not under Local Bankruptcy Rule 2090-5(B) appear in a related Adversary proceeding unless an appearance is filed therein.)

## Standard for Entry of Default Judgment

Rule 7055(b)(2) Fed.R.Bankr.P. governs default judgments entered by a bankruptcy judge. Granting a motion for the entry of a default judgment lies within the sound discretion of the trial court. Merrill Lynch Mortgage Corp. v. Narayan, 908 F.2d 246, 252 (7th Cir. 1990) (citing Dundee Cement Co. v. Howard Pipe & Concrete Products, Inc., 722 F.2d 1319, 1322 (7th Cir. 1983)). In the bankruptcy context, where a debtor has a presumptive right to a discharge, default judgment motions should not be granted unless the movant shows that its debt is nondischargeable as a matter of law. Valley Oak Credit Union v. Villegas, 132 B.R. 742, 746 (9th Cir. BAP 1991) (court must determine whether plaintiff is entitled to judgment); In re McArthur, 258 B.R. 741, 746 (Bankr. W.D. Ark.2001) (noting that bankruptcy courts have taken a conservative approach and sometimes refrain from granting default judgment motions which deprive debtor of discharge).

Thus, the issue here is whether Plaintiff has shown at least *prima facie* facts meeting the legal requirements to except a debt from discharge under 11 U.S.C. § 523(a)(2)(A).

**Section 523(a)(2)(A)**

Section 523(a)(2)(A) provides in relevant part:

(a) A discharge under section 727 ... of this title does not discharge an individual debtor from any debt--
    (2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by--
        (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition.

A party seeking to except a discharge for fraud must establish each element of § 523(a)(2)(A) by a preponderance of the evidence. Grogan v. Garner, 498 U.S. 279, 286, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991); In re Martin, 698 F.2d 883, 887 (7th Cir.1983). The statute is narrowly construed so as not to undermine the Code's purpose of giving the honest but unfortunate debtor a fresh start. In re Scarlata, 979 F.2d 521, 524 (7th Cir.1992).

Section 523(a)(2)(A) excepts debts from discharge that are based on either intentional misrepresentation or fraud. McClellan v. Cantrell, 217 F.3d 890, 893-94 (7th Cir.2000) Section 523(a)(2)(A) is not limited to false representations but includes actual fraud. Fraud has been defined as the following:

[A] generic term, which embraces all the multifarious means which human ingenuity can devise and which are resorted to by one individual to gain an advantage over another by false suggestions or by the suppression of truth. No definite and invariable rule can be laid down as a general proposition defining fraud, and it includes all surprise, trick, cunning, dissembling, and any unfair way by which another is cheated.

McClellan v. Cantrell, 217 F.3d 890, 893 (7th Cir. 2000).

To make out a claim under § 523(a)(2)(A), a creditor must usually prove that (1) the debtor made a false representation of fact (2) which the debtor (a) either knew to be false or made with reckless disregard for its truth and (b) made with an intent to deceive, and (3) the creditor

-6-

justifiably relied on the false representation. In re Bero, 110 F.3d 462, 465 (7th Cir.1997); Citibank (S. Dakota), N.A. v. Michel, 220 B.R. 603, 605 (N.D. Ill.1998); Golant v. Care Comm, Inc., 216 B.R. 248, 253 (N.D. Ill.1997). However, under McClellan in the Seventh Circuit any nefarious scheme will qualify, as shown by the foregoing quotation.

In this case, Plaintiff argues that the Debtor concealed the sale of the Property from LaSalle to allow him to continue to withdraw funds from his line of credit. (Compl. ¶ 10.) Plaintiff also argues that the Debtor committed fraud by intentionally failing to cancel the line of credit once the Property was sold, claiming that only the borrower could cancel the credit line.

During a hearing held on the Motion for Default on February 28, 2006, the following instructive dialogue took place between this Court and Plaintiff's counsel, Mr. Vist:

> THE COURT: ... The property was sold. The bank was paid 105,000, but the note continued to be outstanding on a credit agreement. Now, at that point the credit agreement no longer had collateral securing it; right?
>
> MR. VIST: Precisely.
>
> THE COURT: But this fellow continued to draw on his credit agreement?
>
> MR. VIST: Precisely.
>
> THE COURT: And ... even though the bank knew that the collateral was now gone, the bank continued to honor the draws.
>
> MR. VIST: Precisely.
>
> THE COURT: And you say that's a fraud on the bank.
>
> MR. VIST: Precisely.

(Trial Tr., Feb. 28, 2006, 3-4.)

It is clear from the record that LaSalle did know about the sale of the Property which was its collateral. In fact, Plaintiff concedes that LaSalle's original line of credit loan to Debtor was paid fully from the sale closing of that Property. Id. Therefore, it is nonsense for Plaintiff to argue that LaSalle was unaware of the sale, or that Debtor intentionally concealed the sale of the collateral Property from LaSalle.

Plaintiff also argues that Debtor committed fraud by intentionally failing to terminate his Credit Agreement when the Property was sold. (Pl. Findings of Fact ¶ 8.) Plaintiff claims that pursuant to Illinois law only the Debtor could request that the lien be released. (Pl. Findings of Fact ¶ 10.) It cites to § 4.1 of the Illinois Interest Act and First American Title Ins. Co. v. TCF Bank, 286 Ill.App.3d 268, 676 N.E.2d 1003, 222 Ill.Dec. 39 (1997) for supporting authority.

Plaintiff's reliance and interpretation of these sources is misplaced. In First American Title Ins. Co., the bank extended a revolving line of credit to a borrower secured by a residential mortgage. It was found that the bank was not contractually obligated to release its lien on the borrower's home when the bank cashed a check tendered to it by a title insurance company in satisfaction of the bank's loan. It was held that under the clear and unambiguous language of the mortgage agreement and revolving credit agreement, the bank had no obligation to release its lien on the property until or unless the borrower cancelled the agreement. The Bank was also not legally obligated to release the lien without request from the borrower pursuant to the Illinois statute governing revolving credit agreements. It did not hold that the Bank there had no right to cancel the credit line when its collateral was gone.

In this case, the Credit Agreement pleaded in the Complaint states the following:

**Lender's Rights.** Under this agreement, we have the following rights:

> **Termination and Acceleration: We can terminate** your Credit Line Account and require you to pay us the entire outstanding balance in one payment, and charge you certain fees, if any of the following happen: ... (3) Your action or inaction adversely affects the collateral for the plan or our rights in the collateral. This can include, for example, ... **transfer of title or sale of the dwelling**...

The Credit Agreement further provides that it will be governed by and interpreted in accordance with federal law and laws of the State of Illinois. (Ex. 1 to Compl., emphasis supplied.)

Pursuant to Illinois law, if language in a contract is facially unambiguous, the "four corners" rule requires that it be interpreted as a matter of law without the use of parol evidence. Dean Management, Inc. v. TBS Construction, Inc., 339 Ill.App.3d 263, 269, 790 N.E.2d 934, 939-40, 274 Ill.Dec. 161, 166-67 (2003). "A court must construe the meaning of the language and may not interpret the contract in a way contrary to the plain and obvious meaning of its terms....[a] contract term is ambiguous when it may reasonably be interpreted in more than one way." Id.

Applying the plain meaning rule to the Credit Agreement, it is clear that LaSalle had the right to terminate the credit line upon transfer of the Property. The cited clause in the Credit Agreement is clear, unambiguous, and cannot reasonably be interpreted in any other way. Further, nothing in the contract provides that only the borrower may cancel the credit line. (Ex. 1 to Compl.)

LaSalle therefore had the option to cancel the credit line upon sale of the Property in January of 2004. It failed to do so and therefore accepted the risk of draws on an unsecured

credit line. Debtor subsequently drew $105,000 on his still-existing line of credit without any effort by LaSalle to close down the credit. The Plaintiff has failed to demonstrate that the Debtor committed fraud by withdrawing funds on an open account that could have been closed by LaSalle. It should be noted that Plaintiff's counsel even stated, "It's quite possible that the bank was not correct in following the procedures in demanding that the request to close [the credit account] would be given at the [sale] closing." (Trial Tr., Feb. 28, 2006, 8.)

The Illinois Interest Act provision also cited by the Plaintiff does not support the proposition that only the borrower could cancel the credit line. Instead, § 4.1 of the Interest Act mandates that the request for a release of a lien must come directly from the borrower. 815 Ill. Comp. Stat. 205/4.1 (1989). The Interest Act also provides that "[a]ny request by a borrower to release a security interest under a revolving credit arrangement shall be granted by the lender provided the borrower renders payment of the total outstanding balance as required by this Section before the security interest of record may be released." Id. That obviously happened when the collateral was sold and existing loan was paid off and released.

## CONCLUSION

Plaintiff has not met its burden *prima facie* to show by prove-up following default that its debt should be excepted from discharge. The averments in Plaintiff's complaint, supporting affidavit, and statement of findings of fact and conclusions of law, even taken as true, only show the Debtor withdrew $105,000 on an open line of credit at LaSalle no longer secured by collateral, all done with full knowledge of the Bank.

This is a remarkably simple case demonstrating a blunder by the Bank. Upon release of the collateral lien, it should and could have cancelled the line of credit. Instead, it left Debtor

with the right to draw on unsecured credit and knowingly accepted the risk of such unsecured loans for 18 months until Debtor filed his bankruptcy case. Its subrogee, the Plaintiff here, seeks to convert this blunder by the lender into a judgment barring dischargeability of the debt, but lacks the evidence to do that.

A party seeking to except a discharge for fraud must establish each element of Section 523(a)(2)(A) by preponderance of the evidence. Grogan v. Garner, 498 U.S. 279, 286, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991); In re Martin, 698 F.2d 883, 887 (7th Cir.1983). In a default situation, each such element must be established at least *prima facia*. Plaintiff has not offered any evidence to demonstrate that Debtor made a false representation of fact, a key element that must usually be shown to support an exception to discharge under § 523(a)(2)(A). Nor has Plaintiff shown some nefarious scheme carried out by Debtor, that amounts to fraud, such as borrowing with no intent at the time of drawing on his credit line ever to repay the monies borrowed. Plaintiff has also certainly failed to demonstrate that only the Debtor could have terminated the credit line when the collateral was sold.

Therefore, Plaintiff's motion for entry of default judgment is denied. The Adversary proceeding will be dismissed with prejudice since Plaintiff was aware of the Court's questions about this case and apparently lacks any more evidence that would meet its need.

ENTER:

Jack B. Schmetterer
United States Bankruptcy Judge

Entered this 12th day of April 2006.

-11-

## CERTIFICATE OF SERVICE

I, Dorothy Clay certify that on April __12__, 2006, I caused to be mailed by United States first class mail copies of the foregoing MEMORANDUM OPINION to the following:

John B. Stanis, Esq.
Masuda, Funai, Eifert & Mitchell, Ltd.
1475 East Woodfield Road
Suite 800
Schaumburg, IL 60173-5485
Counsel for Plaintiff

Gary Vist, Esq.
Masuda, Funai, Eifert & Mitchell, Ltd.
203 North LaSalle Street
Suite 2500
Chicago, IL 60601
Counsel for Plaintiff

Steven L. Popuch, Esq.
650 North Dearborn Street
Suite 750
Chicago, IL 60610
Counsel for Debtor in bankruptcy matter

Mr. Brano Zecevic
5250 North Lincoln
Chicago, IL 60625

_Dorothy Clay_
Secretary/Deputy Clerk